Janice Marie FOX, Appellant,

v.

Robert Francis GARZILLI, Appellee,

Superior Court of Pennsylvania.

Argued Jan. 12, 2005.
Filed May 13, 2005.

Joseph S. Britton, Langhorn, for appellant.

Robert F. Garzilli, appellee (pro se) (no brief filed).

Before: LALLY–GREEN, BOWES and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 This is an appeal by Janice Fox ("Mother") from the June 11, 2004 order of the Bucks County Court of Common Pleas denying her request to modify a custody order insofar as it provided that the parties' children should attend school in Pennsbury School District, where Appellee Robert Garzilli ("Father")[1] resides, rather than Council Rock School District, where Mother currently resides. We are constrained to reverse.

¶ 2 The parties separated in October 2001 and entered into an agreed custody order on November 26, 2002, concerning their children, Olivia, born July 7, 1995, and Lara, born March 3, 1997. That or-

---

1. Father did not file a brief in this appeal.

der, which was dictated during a hearing, provided, in relevant part:

> The parties agree that they shall have shared legal custody as this term is defined by the laws of the Commonwealth of Pennsylvania, both the statutory and case law. The parties shall, also, have shared physical custody consistent with the schedule as set forth below.
>
> ....
>
> The parties agree that Olivia and Lara shall continue at Quarry Hill Elementary School in the Pennsbury School District through the remainder of this year or until further Order of Court. The parties further understand that **this is entirely without prejudice to either party seeking a change in the school** that the children are attending after their period of time—the agreed time at Quarry Hill School.
>
> Therefore, **it's fully underst[ood] by both parties it's completely without prejudice as to where the children will attend school next year** consistent with the terms of this agreement.

Order, 11/26/02; N.T., 11/26/02, at 2, 8–9 (emphasis added). In addition to shared legal custody, Mother has physical custody Sunday through Thursday each week until the last week of each month when she additionally has custody for the weekend. Father has physical custody three weekends each month from Thursday evening until Sunday; the fourth week he has custody overnight, Thursday evening until Friday.

¶ 3 When the custody agreement was entered, the parties had not resolved equitable distribution issues. Mother did not know where she ultimately would reside because that decision depended upon her financial situation following equitable distribution. She therefore agreed to allow the children to attend school where the marital home was located for the balance of that school year. Once the economic issues were settled, Mother obtained a residence, and since the children resided primarily with her, she sought to have them change schools to the district where she had relocated. The parties live one and one-half miles from each other. Thus, on February 25, 2004, Mother filed a petition to modify the custody order insofar as it dictated where the children would attend school.

¶ 4 The court held a hearing on June 11, 2004, and found that both school districts provide a superior education. The record supports that conclusion. Although the students in Mother's district appear to score higher in most areas that typically are assessed, the differences are extremely slight. N.T., 6/11/04, at 44–45. The trial court noted:

> The vast majority of issues raised on appeal deal with Petitioner's perception of the Court's overall assessment gauging the benefits and liabilities inherent in each school district. These issues range from the quality of services each school district has to offer, (e.g. class size, rankings, extracurricular activities) to the practicality of the custodial arrangements (e.g. commuting, school events, location of children's friends). Although these topics are relevant to an overall assessment of the best interests of the children, they are by no means our only consideration, particularly in light of the high quality of services offered in both school districts. Furthermore, many of the practical considerations presented are not yet relevant to our assessment. Specifically, the children currently attend first and third grades at Quarry Hill Elementary, which is located approximately two (2) miles from [Mother's] residence and somewhat closer to [Father]. [Mother] has requested a modification of the cus-

tody order so that the children would attend Goodnoe Elementary, which is located approximately one half (.5) mile from [Mother's] residence and just as close to [Father].

Under the current arrangement, the choice of school does not present a burdensome commute for either party, nor does it present a situation that is contrary to the best interests of either child. The majority of any perceived difficulties focused on the future possibility of inconvenience to [Mother] and the children, as [Mother] is more often responsible than [Father] for the children's transportation to and from school. [Mother] urged the Court to adopt the point of view that the earlier any change in school districts took place the easier it would be for the children to adapt to their new surrounding and integrate themselves in their new schools. Obviously, this position presupposes that a change in school districts is necessarily a foregone conclusion.

Trial Court Opinion, 8/30/04, at 4–5. The trial court ultimately refused to permit the children to transfer to the school district in which they reside with Mother.

¶ 5 Mother raises the following issues:[2]

A. Whether the trial court erred and/or abused its discretion by failing to enter an order granting Appellant's request to have the children attend school in the school district where Appellant, who is the children's primary custodian during the school year, resides.

B. Whether the trial court erred and/or abused its discretion by making what was originally a without prejudice custody order pertaining to having the children attend school where Appellee resides into a de facto with prejudice order.

C. Whether the trial court erred and/or abused its discretion by failing to appropriately consider the short and long term effects on Appellant and the children in refusing to have the children change school districts.

D. Whether the trial court abused its discretion and/or committed an error of law by allowing Appellee to testify as to the hearsay testimony of the children who were in first and third grade.

E. Whether the trial court erred and/or abused its discretion by requiring the children to attend the Pennsbury School District which Appellant believes is inconsistent with an appropriate interpretation of 24 P.S. § 13–1302.[3]

Mother's brief at 3.

¶ 6 Our standard and scope of review is well settled. In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. *McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992); *T.B. v. L.R.M.*, 2005 PA Super 114. "As with initial custody determinations, appellate review of modification orders is broad." *Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa.Super.2004). Moreover:

This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. *McMillen, supra* at 202, 602 A.2d at 847. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the

---

**2.** We have renumbered Appellant's issues for our convenience.

**3.** In light of our disposition of this matter, we need not reach this issue.

proceedings and thus viewed the witnesses first hand. *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super.2004); *Dranko [v. Dranko*, 824 A.2d 1215 (Pa.Super.2003),] at 1219 (citing *Robinson v. Robinson*, 538 Pa. 52, 57, 645 A.2d 836, 838 (1994)); *Andrews v. Andrews*, 411 Pa.Super. 286, 601 A.2d 352, 353 (1991), *affirmed*, 533 Pa. 354, 625 A.2d 613 (1993). However, we are not bound by the trial court's deductions or inferences from its factual findings. *McMillen, supra* at 202, 602 A.2d at 847. Ultimately, the test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Dranko, supra* at 1219 (quoting *Wheeler v. Mazur*, 793 A.2d 929, 933 (Pa.Super.2002)). We may not interfere with the trial court's factual conclusions unless they are unreasonable in light of the factual findings, and thus represent a "gross abuse of discretion."[1] *Robinson v. Robinson*, 538 Pa. 52, 56, 645 A.2d 836, 837–38 (1994); *Jackson, supra* at 1252 (quoting *Luminella v. Marcocci*, 814 A.2d 711, 716 (Pa.Super., 2002)); *Graham v. Graham*, 794 A.2d 912, 914–15 (Pa.Super.2002) (quoting *Vineski v. Vineski*, 675 A.2d 722, 723 (Pa.Super.1996)); *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super.2002).)

[1] Supreme Court has clarified that whether the standard of review is articulated as "gross abuse of discretion" or simply "abuse of discretion," the test is the same: whether the trial court's conclusions are unreasonable based upon the evidence of record. The use of "gross" is mere surplusage. *Moore v. Moore*, 535 Pa. 18, 28, n. 4, 634 A.2d 163, 168 (1993).

*Johns v. Cioci*, 865 A.2d 931, 936 (Pa.Super.2004).

¶ 7 We find merit in Mother's claim that the trial court abused its discretion in denying the change of school districts. Mother first seeks application of the primary caretaker doctrine, which states that when both parents are otherwise fit, one parent's role as the child's primary caretaker may be given weight as a determining factor by the court in deciding primary custody. *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341 (1988). The instant matter does not involve a determination of primary custody, thereby rendering inapplicable the primary caretaker doctrine. However, since Mother has physical custody the majority of the time, we agree that the trial court should have given that factor weight when determining where the children should attend school.

¶ 8 We also are persuaded that, in refusing to permit the transfer of the children to the school district where they reside, the trial court cast what was a "without prejudice custody order" into a "defacto with prejudice order." Mother's brief at 16. We have previously discussed the significance of the language "without prejudice" when it appears in a court order. For example, we stated:

[T]he lower court's order contained the proviso that the order was granted "without prejudice." Our court has interpreted the phrase "without prejudice" as importing the contemplation of further proceedings. *Robinson v. Trenton Dressed Poultry Co.*, 344 Pa.Super. 545, 496 A.2d 1240 (1985). Furthermore, when this phrase appears in a decree it shows that the judicial act done is not intended to be res judicata of the merits of the controversy. *Robinson, supra; Commonwealth ex rel. Eldredge v. Eldredge*, 175 Pa.Super. 276, 104 A.2d 185 (1954).

*Jonas v. Wiesmeth Const. Co.*, 360 Pa.Super. 173, 520 A.2d 40, 41 (1987). Herein, the trial court focused primarily on the fact that the children are doing well in Father's school district. However, this

fact cannot overshadow the agreed-upon language in the order. That language would have no effect if the trial court is permitted to ignore the express contemplation that Mother, standing on equal footing with Father, could seek a change in the children's school placement without the burden of establishing factors that negatively impact the *status quo*.

¶ 9 When Mother agreed to the children's temporary school attendance in Father's school district, the school year was well underway. Mother's agreement represented a conscious decision on her part to eliminate disruption in the girls' school program. *Id.* at 10, 13. Mother was renting a residence, and since the equitable distribution had not been finalized, Mother decided to wait to ascertain what and where she could afford to buy a residence. *Id.* at 16, 21. The trial court noted as much. Trial Court Opinion, 8/30/04, at 4. Mother explained that she sought to remain close to Father's residence, but desired a townhouse as opposed to a single family home because, as a single parent, she did not have the ability to maintain it. There were no townhouses in the catchment area of Father's elementary school. *Id.* at 15–16.

¶ 10 The children are relatively young. As noted, the children reside primarily with Mother, spending Sunday through Thursday with her. They stay at Father's residence Thursday night through Sunday three weekends per month; the fourth weekend, the children stay with Father only Thursday until Friday. At the time of the trial court's decision, they were in first and third grades; presumably, they are now in second and fourth grades. Mother resides in Council Rock School District, which is adjacent to where Father resides in the Pennsbury School District. The parties' two homes are one and one-half miles apart. The school the girls currently attend is approximately two miles from Mother's house and somewhat closer to Father's house. Mother must drive them to and from school every day, since school buses are not available to transport the children except within the Council Rock School District. N.T., 6/11/04, at 21, 57–58.

¶ 11 The elementary school the girls would attend in Council Rock School District is one-half mile from both Mother's and Father's homes. Mother testified that the middle school for sixth, seventh and eighth grade that the girls would attend in Council Rock School District is one and one-half miles from her home. *Id.* at 17. The middle school for Pennsbury School District will be a twenty-to-thirty-minute ride from Mother's house. The trip to the high school is even longer; she described it as a thirty-five minute ride. *Id.* at 20. Again, Mother would be solely responsible for transportation of the girls during her custody period since bus transportation is available only for students attending Council Rock schools.

¶ 12 Mother further testified that now, as a single parent, she is seeking training to become a court reporter. As such, she will have to attend classes in Philadelphia. Driving the girls, who eventually will be attending different schools, will be burdensome and certainly will be an interference with Mother's ability to attend school and eventually, work. *Id.* at 23–24.

¶ 13 If they attended school in the district in which they reside, the girls could get a bus directly across the street from Mother's residence. *Id.* at 23. Moreover, the greater distance and travel times will require the girls to awaken earlier in order to accommodate the additional travel time. Significantly, school attendance in the district where they reside also will have a favorable impact on the girls' ability to establish friendships with children who live

in the immediate vicinity. Mother testified that traveling on the school bus and attending school with the children who live in their neighborhood is in the children's "best interest to establish relationships where they live during the school week, friendships where they live during the school week...." *Id.* at 24.

¶ 14 The trial court concluded that "the choice of school does not present a burdensome commute for either party, nor does it present a situation that is contrary to the best interests of either child." Trial Court Opinion, 8/30/04, at 5. The evidence simply does not support this conclusion. It obviously is a true statement for Father, since he transports the children only one day per week. However, for Mother, the commute is burdensome and the difficulty will only escalate. It is proactive to have the girls make the change now, before they become involved in school activities, established friendships, potential athletic commitments, and academic and extracurricular programs. The school districts, as acknowledged by the trial court, are comparable. Since the children live primarily with Mother, the record supports the conclusion that they should attend school where they reside. In light of the express language in the agreement and the present and future burden placed on the primary caretaker by the court's decision, we conclude that the trial court's denial of a change in the school districts to where the girls reside was an abuse of discretion.

¶ 15 We also cannot condone the trial court's reliance on the hearsay testimony of Father that the children are opposed to any change in school districts. Mother objected to such testimony, and the trial court overruled the objection. N.T., 6/11/04, at 48. In its opinion, the trial court acknowledged its inclusion of hearsay testimony but protested that it did not assign it "any significant weight." Tri-al Court Opinion, 8/30/04, at 7. However, the trial court clearly did assign it significant weight when it concluded, "Based on the testimony elicited from both parents it is clear that the children are thriving in their current placement, and do not wish to change schools." *Id.* at 6. This was error.

¶ 16 The trial court emphasized continuity and maintenance of stability for the girls over the other factors that recommended a change in school districts. As noted above, the only testimony supporting maintenance of stability was hearsay testimony that was erroneously admitted. Moreover, continuity must be considered, but it is not controlling. We have stated:

> While continuity in school is an important factor and must be considered, it, like any other single factor, is not controlling. The trial court recognized that "if custody is changed, the children would have to readjust to a different custodial schedule. If custody is awarded on a primary basis to mother, the children would have to change school districts." .... Clearly, the court considered the disruption that attending a new school would occasion for the children but concluded it was necessary for their best interests to be achieved.

*Swope v. Swope,* 455 Pa.Super. 587, 689 A.2d 264, 266–67 (1997). Similarly, here, many of the factors that make up the rich fabric of a child's school years support changing them to their home school district in order to effectuate their best interests, and the court erred in refusing to do so. Where the trial court's conclusions are unreasonable as shown by the evidence of record, the court has committed an abuse of discretion. *Wheeler v. Mazur,* 793 A.2d 929 (Pa.Super.2002); *Silfies v. Webster,* 713 A.2d 639 (Pa.Super.1998). That clearly is the case herein.

¶ 17 In conclusion, in light of the language of the relevant custody order that it was entered "without prejudice to either party seeking a change in school," N.T., 11/26/02, at 8, we believe the court erred in relying upon the children's attendance in Pennsbury School District as a favored factor. To give weight to the *status quo* was improper in light of the language of the prior order, and doing so renders that language a nullity. That the children are doing well in Pennsbury is not the focus of the controversy. Indeed, Mother was not required to prove that something was amiss in the children's attendance in Pennsbury in order to establish that a change in the custodial arrangement would serve their best interest. *Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988). The court should have evaluated and weighed the factors regarding school attendance within a framework that did not emphasize Pennsbury over Council Rock merely because the children were doing well in their present school.

¶ 18 Order reversed. Case remanded to the trial court for entry of an order providing that children will attend Council Rock School District. Jurisdiction relinquished.