J-A30016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.F. | : | |
| | : | |
| Appellant | : | No. 955 MDA 2019 |

Appeal from the Order Entered May 14, 2019
In the Court of Common Pleas of Lycoming County Civil Division at
No(s): FC-2013-0021695-CU

BEFORE:    DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: FEBRUARY 28, 2020**

K.F. (Mother) appeals the order granting the petition for modification of custody filed by R.P. (Father) and awarding Mother and Father shared legal and physical custody of their son, G.P. (Child), born in November 2013. We affirm.

The trial court set forth the factual and procedural history of this matter as follows:

> [Mother] has appealed this [c]ourt's Order dated May 13, 2019, and docketed on May 14, 2019, issued after a custody trial, with regard to the Petition for Modification of Custody filed by [Father] on September 6, 2018. At the time of the custody trial, Father was present and represented by Melody Protasio, Esquire, and Mother was present and represented by Brandon Schemery, Esquire. Prior to the trial, Father and Mother reached an agreement on a custody schedule for [Child] wherein the parties

_____

[*] Retired Senior Judge assigned to the Superior Court.

would share physical custody on a week-on/week-off basis with the custody exchanges taking place on Fridays at 4:30 p.m.

Although the parties agreed to the physical custody schedule, they could not agree on which school district [Child] will attend when he enters Kindergarten in the fall of 2019. Additionally, Mother requested that the custody order contain a provision indicating that if a party would need care for [Child] for a period of three hours or longer, that party must offer the other parent the right of first refusal to care for [Child] during that time.[1] Father objected to the inclusion of this provision as his mother [(Paternal Grandmother)] has provided childcare for [Child's] entire life, and he wishes to allow her to continue doing so during his periods of custody.

Following a full day of testimony and, after careful consideration of the facts and exhibits, this [c]ourt determined that [Child] would attend [school in the South Williamsport School District (South Williamsport)] where Father resides. Additionally, the [c]ourt declined to include a right of first refusal/babysitting

_____

[1] The prior custody order of December 3, 2014 contained a "first option clause." Mother's Brief at 6. After Father filed the instant petition for modification of custody, but before trial, Mother and Father agreed to an interim custody stipulation, which included the following provisions:

2. The parties acknowledge that paragraph 3(h) of their current custody order, filed December 3, 2014, permits the non-custodial parent to pick [Child] up from daycare if he/she is not working/attending school and the custodial parent is working. The parties wish to amend that provision of the Order on an interim basis.

*    *    *

4. . . . the parties specifically agree that on days where [Child] has preschool (Mondays, Wednesdays, Fridays), the non-custodial parent may get custody if they are not working or in school (and the custodial parent is working or in school) from 11:30 a.m. until 4:15 p.m. or earlier if the custodial parent is off from work/school earlier.

Interim Custody Stipulation, 2/21/19, at ¶¶ 2, 4.

provision in the Order. Mother's counsel filed a Petition for Reconsideration on May 23, 2019, which was summarily denied on May 29, 2019. Mother filed a timely Notice of Appeal on June 12, 2019.[2]

Trial Ct. Op., 7/2/19, at 1-2.

On appeal, Mother raises two issues, which we have reordered as follows:

1. Whether the trial court erred in ordering [Child] to attend [school in South Williamsport]?

2. Whether the trial court erred in giving a non-party, third party individual, *de facto* visitation?

Mother's Brief at 5.

Mother does not challenge the trial court's award of shared physical and legal custody. Instead, she challenges two aspects of the order, namely: (1) the choice of school district and (2) the absence of a first refusal/babysitting provision, which, Mother asserts, is equivalent to an improper grant of custody to Paternal Grandmother. ***See id.*** at 35-36, 45, 62. We address these challenges in further detail below.

Initially, we note that in custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility

_____

[2] As required by Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b), Mother filed a concise statement of errors complained of on appeal contemporaneously with her notice of appeal.

- 3 -

and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) sets forth the best-interest factors that the trial court must consider in making a custody award. *See E.D. v. M.P.*, 33 A.3d 73, 79-80, n.2 (Pa. Super. 2011). However, if the order addresses a discrete and

distinct issue that is ancillary to the form of custody, full consideration of the Section 5328(a) factors is not necessary. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 403 (Pa. Super. 2014). In *S.W.D.*, this Court observed that

> resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times—like here—these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

*Id.* at 403; *see also M.O. v. J.T.R.*, 85 A.3d 1058, 1063 (Pa. Super. 2014) (noting that when the trial court does not make an award of custody, but modifies a discrete custody-related issue, it does not need to address the best-interest factors in Section 5328(a) when determining the child's best interest).

Mother first contends that the trial court erred in deciding that Child would attend school in South Williamsport rather than in the Williamsport Area School District (Williamsport). Mother's Brief at 33-34, 46-62. Mother argues that although "the trial court was not required to make a full analysis of the factors, it was not excused from considering the relevant § 5328(a) factors." *Id.* at 47. In particular, Mother asserts that the trial court should have

considered Section 5328(a)(3), (4), (6), (9), (10), (11), and (12).[3] *Id.* at 49. Relying on *Fox v. Garzilli*, 875 A.2d 1104 (Pa. Super. 2005), Mother argues that the trial court did not properly consider the inconvenience of transporting Child to school in South Williamsport. *Id.* at 48.

Mother contends that, if Child attends school in Williamsport, transportation will be more convenient, and that the trial court did not truly consider Mother's inconvenience. *Id.* at 50-52. Mother argues that the trial court did not consider that Mother performs more parental duties than Father, and that Father has not been involved in Child's daily transportation. *Id.* at

---

[3] The pertinent subsections of Section 5328(a) are:

> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (6) The child's sibling relationships.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

23 Pa.C.S. § 5328(a).

54-56.  Mother asserts the trial court failed to consider that Mother's other child, Child's half-sibling, will eventually attend school in Williamsport, providing additional convenience to Mother if both children attend school in Williamsport.  *Id.* at 56-57.  Mother further argues that the trial court should have credited testimony that, despite her frequent moves, she built a new home and intends to remain in the home.  *Id.* at 58.

Additionally, Mother contends that the trial court failed to consider that other children from Child's current preschool will attend school in Williamsport. *Id.* at 59.  Moreover, Mother claims that the court failed to assess Father's childcare arrangements and failed to consider how Child's attendance at school in South Williamsport would inconvenience Paternal Grandmother.  *Id.* at 60-61.

Mother summarizes her position as follows:

> While the trial court was not required to make a full analysis of the child custody factors, had it considered the relevant factors to this case and used *Fox* . . . as guideposts to making its decision, it would have been abundantly clear that the decision on May 13, 2019 manifestly inconvenienced both parties to the detriment of the best interests of the child.  Therefore, the trial court abused its discretion in deciding [Child] should attend South Williamsport School District, and its decision should be reversed.

*Id.* at 61-62.

When reviewing a trial court's decision regarding a discrete issue of school choice, this Court has noted that

> the child's best interest is still paramount.  The § 5328(a) factors, however, are a means to that end, and represent a legislative framework for determining a form of custody that is in a child's

best interest. Even where a trial court need not consider and address the § 5328(a) factors, it still must consider the child's best interest in custody matters.

**S.W.D.** 96 A.3d at 403.

Here, the trial court addressed the school choice issue as follows:

Mother . . . alleges that this [c]ourt abused its discretion pursuant to 23 Pa.C.S.[] § 5328(a) by failing to give appropriate weight to her "overwhelmingly favorable factors" related to the minor child attending [school in Williamsport], where she resides. Again, this [c]ourt notes that Mother's reliance on 23 Pa.C.S.[] § 5328 is misplaced. This statute enumerates the factors the [c]ourt must consider in determining the best interest of the child when ordering any form of custody. In the present case, the parties arrived on the day scheduled for the custody trial with an agreement regarding a shared physical custody schedule. Therefore, counsel for the parties agreed that a comprehensive evaluation of the factors enumerated in 23 Pa.C.S.[] § 5328(a) was not required. While the parties agreed on a shared physical custody schedule, they left it for the [c]ourt to decide which school district [Child] would attend and whether or not Mother's request for a babysitting provision should be granted. Essentially, with the physical and legal custody provisions agreed upon, the testimony on the remaining issues was akin to a hearing on a petition for special relief.

When determining that [Child] should attend [school in South Williamsport], the [c]ourt carefully considered both parties' positions. Mother, who recently had another child with her new husband, will be a stay-at-home mother. Father works Monday through Friday. His hours are currently 8:00 a.m. to 4:00 p.m.; however, he testified that if his request to have [Child] attend [school in South Williamsport] was granted, he had the flexibility to change his hours to 9:00 a.m. to 5:00 p.m. Students in [South Williamsport] can arrive for school at 8:15 a.m. and classes begin at 8:35 a.m. This would enable Father to take [Child] to school every day on his custody weeks. In [Williamsport], the doors do not open until 8:50 a.m. This would prevent Father from ever being able to take the Child to school during his weeks of custody, even if he changed the start of his work day to 9:00 a.m., and require him to arrange for childcare prior to the start of the school day, including a third party having to transport [Child] to [school in Williamsport].

Father has lived in [South Williamsport] for [nine] years and lives within walking distance of the elementary school that Child will attend. Father had two witnesses testify that they live in his neighborhood and have children who also attend the school, and therefore [Child], who was described as shy, will have peers that he is familiar with when he starts school in South Williamsport. Mother, who has lived in her current home for only one year, lives approximately [ten] highway miles from the elementary school in Williamsport that [Child] would attend had this [c]ourt found in her favor. Mother argued that she has another child who will eventually attend [Williamsport], and that it would be an inconvenience to have her children in different school districts. Although the [c]ourt understands Mother's desire to have her children attend the same school district, because there is a five-year age difference between [Child and Child's half-sibling] they will never attend the same school together. Therefore, the [c]ourt did not find this to be a sufficient reason to tip the scales in favor of [Williamsport].

The [c]ourt did consider the inconvenience that Mother may encounter if she has to make two trips to South Williamsport to take the Child to and from school on her weeks of custody. However, as with any decision in a custody matter, the [c]ourt must determine what is in the best interest of the Child. This [c]ourt reasoned that by attending [school in South Williamsport], on Mother's weeks of custody he will be dropped off and picked up by her. On Father's weeks of custody, he will be dropped off or walked to school by Father and picked up by paternal grandmother and taken back to Father's house. This significantly reduces the amount of back-and-forth that [Child] could encounter on Father's weeks of custody if [Child] were to attend [Williamsport]. This arrangement, coupled with the fact that [P]aternal [G]randmother will continue to babysit [Child] on Father's weeks of custody, provides the most consistent and stable schedule for [Child] as he transitions into kindergarten.

Trial Ct. Op. at 3-5 (record citations omitted).

The record supports the trial court's conclusion. Kirk Felix, the principal of Jackson Primary School in Williamsport, and Michele Loomis, the elementary school principal in South Williamsport, testified that the class sizes at each school were approximately the same. N.T., 5/13/19, at 61-63, 128.

- 9 -

Both acknowledged that bus transportation would not be available to the parent who resided outside the district. *Id.* at 66-67, 135. Mr. Felix testified that students can arrive in Williamsport at 8:50 a.m. and are released at 3:35 p.m. *Id.* at 134. In South Williamsport, students can arrive at 8:15 a.m. and classes begin at 8:35 a.m., with dismissal at 3:05 p.m. *Id.* at 63-64.

Mother testified that she primarily objected because if Child attended South Williamsport, the driving distances would make it inconvenient for everyone, but if Child goes to Williamsport, only Father would bear an inconvenience.[4] *Id.* at 173-74. Mother asserted that Father could currently drop Child off at preschool in Williamsport on his way to work, but that he makes Paternal Grandmother do it instead. *Id.* at 175. Mother noted that most of Father's drop-offs and pick-ups of Child currently occur at his sister's home, which is close to Mother's residence. *Id.*

Mother acknowledged the trip to South Williamsport is approximately the same distance as her current trip to Child's preschool, but expressed concerns about having to make the trip more frequently. *Id.* at 204-05. Mother explained that it would be inconvenient for her to make the trip twice per day, particularly once Child's half-sibling attends school. *Id.* at 177-79, 205.

---

[4] M.R., Child's stepfather, testified that it would be more convenient for Child to attend school in Williamsport because M.R. and Mother would not have to travel to two different school districts to watch Child's and Child's half-sibling's activities. N.T., 5/13/19, at 146-48.

- 10 -

However, Mother agreed that Child and Child's half-sibling would never attend the same school because of their age difference. *Id.* at 210. Additionally, Mother testified that she wanted Child to ride the bus to school to gain independence. *Id.* at 176. Mother believed that the bus trip would take ten to fifteen minutes, but Mother acknowledged she did not know. *Id.* at 203.

Father testified that he lives two blocks from the elementary school in South Williamsport and has resided in his home for ten years. *Id.* at 71. Currently, Father works from 8:00 a.m. to 4:00 p.m., but has flexibility to work from 9:00 a.m. to 5:00 p.m., which he would do if Child attended school in South Williamsport. *Id.* at 72-73. This would enable Father to take Child to school during his custodial time. *Id.* at 73. However, if Child attended school in Williamsport, the later start time and the greater distance to his job would prevent Father from taking Child to school in the morning. *Id.* Father asserted that Child's middle and high schools in Williamsport would be farther from Mother's house than the schools in South Williamsport. *Id.* at 95-96.

Father testified that if Child went to school in South Williamsport, Paternal Grandmother would retrieve Child's cousin, N., at his bus stop after school, and then travel to South Williamsport to pick up Child. Grandmother would then before bring the children a short distance back to Father's house. *Id.* at 100. Father testified Grandmother would stay at his house for less than two hours before he returned home from work. *Id.* at 92. Father

- 11 -

acknowledged that he is the only member of his family who lives in South Williamsport and that Paternal Mother and the rest of his family live geographically closer to each other in the Jersey Shore/Linden area. *Id.* at 104. However, he asserted that the travel times for Paternal Grandmother would not be significantly different if Child went to school in South Williamsport. *Id.*

Father noted that Child is very familiar with the South Williamsport elementary school because they go to the playground there often. *Id.* at 75-76. Father believed that Child, who he described as shy, would attend school in South Williamsport with a friend from Father's neighborhood and would know one of the teachers.[5] *Id.* at 88, 90-91.

Paternal Grandmother testified that if Child attends school in South Williamsport, Father would not need help getting Child to school in the morning. *Id.* at 37, 42. Paternal Grandmother further testified that she could pick her other grandchildren up from the bus at 2:20 p.m. before getting Child when his school day ended at approximately 3:00 p.m. *Id.* at 56-59. Paternal Grandmother acknowledged that she lives closer to Mother than to Father and

_____

[5] R.M., a friend of Father's who has known Father since grade school, testified that his daughter and Child are friends and frequently play together. N.T., 5/13/19, at 6-7. R.M. testified his daughter would attend kindergarten at the South Williamsport elementary school, and he believed there was a good chance his daughter and Child would be in the same class. *Id.* at 8. Further, R.M.'s wife is a teacher at the school and Child knows her. *Id.*

that the school in Williamsport is geographically closer to her. *Id.* at 47-48, 51. However, Paternal Grandmother stated that the difference in the travel times of going to the schools in Williamsport versus South Williamsport "might be one minute or something like that." *Id.* at 51.

Based upon our review of the record, we conclude that the trial court did not commit an error of law or abuse of discretion in its determination that Child would attend school in South Williamsport. Contrary to Mother's argument, the trial court was not required to assess the custody best interest factors when deciding the discrete issue of Child's school district. *See S.W.D.*, 96 A.3d at 403–04.

Further, while Mother argues that *Fox* should control, we disagree. In *Fox*, the mother and father disputed which school district their children would attend. At the time, the mother exercised physical custody of the children from Sunday through Thursday, while the father exercised physical custody from Thursday night through Sunday three weeks per month, and from Thursday night to Friday one week per month. *Fox*, 875 A.2d at 1106. The children were both in elementary school and the parents' homes were one and a half miles apart. *Id.* The children's elementary school, which was located in the father's school district and two miles from the mother's home, was somewhat closer to the father's home. *Id.* at 1109. The mother was required to drive the children to school because busing was not available since her house was not in the same school district. *Id.* If the children remained in the

- 13 -

father's school district, the mother's drive to the middle and high schools in the father's district would exceed twenty minutes, while the middle school in her district would be less than two miles away. *Id.*

Ultimately, the trial court in *Fox* determined that the children would continue to attend school in the father's school district, focusing primarily on the fact that the children were doing well in the school district. *Id.* at 1108. This Court reversed, holding that the evidence did not support the trial court's conclusion that "the choice of school does not present a burdensome commute for either party, nor does it present a situation that is contrary to the best interests of either child." *Id.* at 1110 (record citation omitted)). Instead, this Court observed that if the children attended school in the mother's school district, they could get a bus directly across the street from the mother's residence. *Id.* at 1109. Further, the greater distance and travel times required the children to awaken earlier to accommodate the additional travel time, and attending school district where the mother resided would have a favorable impact on the children's ability to establish friendships with children who lived in the immediate vicinity. *Id.* at 1109-1110. The *Fox* Court held that "[s]ince the children live primarily with [their m]other, the record supported the conclusion that they should attend school where they reside." *Id.* at 1110.

Here, Mother's and Father's physical custody schedule is markedly different from the schedule in *Fox*. Child spends equal time in both homes,

albeit on a week on/week off schedule. Therefore, the predominant feature in **Fox**, that the children lived primarily with one of the parents, is not present here. Therefore, Mother's arguments based on **Fox** merit no relief.

Moreover, although Mother argues that it would be more convenient for her and Paternal Grandmother for Child to attend school in Williamsport, the trial court appropriately focused on the best interests of Child. The trial court considered the inconvenience to Mother of making two trips to South Williamsport to take the Child to and from school on her weeks of custody. **See** Trial Ct. Op. at 5. However, the trial court reasoned that by having Child attend kindergarten in South Williamsport, Mother will drop off and pick up Child on her weeks of custody. **See id.** During Father's weeks of custody, Father will drop off or walk Child to school and Grandmother will pick up Child and taken him back to Father's house. **See id.** The trial court concluded that this significantly reduced the amount of back-and-forth that Child would encounter during Father's weeks of custody and provided the more consistent and stable schedule for Child as he transitions into kindergarten. **See id.** at 5-6.

In sum, after considering the record, as well as the trial court's rationale, we discern no abuse of discretion or error of law in the trial court's conclusion that it is in Child's best interest to attend school in South Williamsport. Accordingly, Mother's first issue fails. **See M.J.M.** 63 A.3d at 334.

In her remaining issue, Mother claims that by denying her a right to custody of Child when Father needs to utilize the services of a babysitter for more than three hours, the trial court awarded Paternal Grandmother "*de facto* visitation." Mother's Brief at 37. Mother asserts that including a right of first refusal would foster the best interests of Child by prioritizing Child's time with his parents as opposed to third parties. *Id.* at 35. Mother argues that the parties previously included a right of first refusal in the custody order and that the trial court's failure to include such a provision in the May 14, 2019, order precludes her from caring for Child when Father is at work and Child has a school break. *Id.* at 35-36.

Mother acknowledges that Paternal Grandmother was not a party to the custody litigation, but contends that Grandmother lacked standing to seek physical custody pursuant to 23 Pa.C.S. § 5325.[6] *Id.* at 37-39. Mother further argues, pursuant to 23 Pa.C.S. § 5327,[7] that there is a presumption in favor of a parent over third parties in custody matters. *Id.* at 41. Moreover, Mother

---

[6] Section 5325 sets forth limited situations where grandparents and great-grandparents can file an action for partial physical custody or supervised physical custody. *See* 23 Pa.C.S. § 5325. Mother also references 23 Pa.C.S. § 5324, which delineates the individuals who may file an action for any form of physical or legal custody.

[7] In pertinent part, Section 5327 provides: "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b).

asserts, "the law protects the natural parent's relationship with his or her child and will not interfere unnecessarily with that relationship, even at the cost of estrangement to the extended family." *Id.* Mother contends:

> This well-known abductive reasoning test applies: if it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck. In this case, if it looks like an award of visitation, sounds like an award of visitation, and acts as an award of visitation, it probably is.

*Id.* at 42-43. Additionally, Mother argues that the trial court failed to consider Child's sibling relationship with Mother's infant daughter. Mother's Brief at 45.

The trial court rejected Mother's argument, reasoning:

> Mother alleges that this [c]ourt abused its discretion in denying her request for a modified inclusion of a long-standing mutual babysitter/first option clause in the final custody Order. Mother further alleges that this essentially gave a third party de facto visitation in lieu of Mother's ability to provide childcare. Mother cites 23 Pa.C.S. § 5324 in her Concise Statement. The [c]ourt initially notes that Mother's reliance on this statute in support of her position is misplaced. 23 Pa.C.S. § 5324 describes certain individuals who may file an action for any form of physical or legal custody. In the instant case, [Paternal Grandmother] was not requesting to intervene in the current custody case, nor was she seeking any defined period of custody of [Child]. The [c]ourt heard testimony from [Paternal Grandmother] that she retired in March of 2016 and started to babysit her grandchild, and had watched him every day since then. [Paternal Grandmother] also babysits her other grandchildren, one of whom is very close with [Child]. For years, [Paternal Grandmother] babysat [Child] with the consent of both parties, including during Mother's periods of custody. It is evident to this [c]ourt that there is a very close bond between [Child] and [Paternal Grandmother], and that she has consistently played an important role in his life as a caregiver.
>
> This [c]ourt's decision did not grant [Paternal Grandmother] any type of standing or any defined period of visitation or physical custody of [Child]. Instead, it simply gave Father the opportunity to make his own arrangements for childcare if needed when [Child] is in his custody. Nothing in this [c]ourt's Order precludes

Father from offering Mother additional time with the Child during his weeks of custody when he is working or during the summer. It merely gives Father the freedom to choose what is most convenient for him in terms of childcare while allowing him to maintain the important long-standing bond between [Paternal Grandmother] and [Child].

Trial Ct. Op. at 2-3.

The record supports the trial court's conclusion. Mother acknowledged that Paternal Grandmother previously provided care for Child when both Mother and Father worked. N.T., 5/13/19, at 164. However, Mother testified that she now stays at home with her new baby and Child. *Id.* While Mother confirmed that Child's relationship with Paternal Grandmother is important, Mother explained that she wants to watch both of her children to foster their relationship and "would love to watch [Child] everyday, be with him and encourage the relationship." *Id.* at 165-66. Mother testified that she was most concerned with including a right of first refusal for summer vacation and school holidays when Child would be cared for by Paternal Grandmother for the whole day while Father works. *Id.* at 167.

Father testified that Paternal Grandmother provided care for Child for the prior three years, during both Father's and Mother's custodial time. *Id.* at 80, 113. Father noted that Child has a very close relationship with his cousin, N., and that Paternal Grandmother also provides care for both children. *Id.* at 94-95. Father explained that he objected to including a right of first refusal because he wanted Child to have a relationship with his family during his custodial time. *Id.* at 111.

Paternal Grandmother testified that she started caring for Child and her two other grandchildren when she retired in March 2016. *Id.* at 28. Initially, Grandmother watched Child during both Mother's and Father's custodial time, as both had to work. *Id.* at 30-31. However, after Mother went on maternity leave in early 2019, Mother provided most of the daytime care for Child. *Id.* at 30-31, 33, 54-55. Paternal Grandmother testified that Child and Child's cousin, N., are good friends and enjoy spending time together. *Id.* at 32-33. When Paternal Grandmother cares for Child during the summer, N. is typically with her as well, and Grandmother takes the children swimming and hiking, and to the library. *Id.* at 28-29.

Contrary to Mother's argument, the trial court did not confer upon Paternal Grandmother any right to visitation or physical custody when it denied Mother a right of first refusal.[8] Rather, it permitted Father, in his

_____

[8] We note that "visitation" is not among the awards of custody contemplated by the current version of the Act. The predecessor to the Act treated "custody" and "visitation" as distinct awards. *See* 23 Pa.C.S. § 5302 (defining "visitation" as "[t]he right to visit a child. The term does not include the right to remove a child from the custodial parent's control") (repealed eff. 2011). The current Act eliminates this distinction. *See* 23 Pa.C.S. § 5322(b) (stating that "[i]n a statutory provision other than in this chapter, when the term 'visitation' is used in reference to child custody, the term may be construed to mean: (1) partial physical custody; (2) shared physical custody; or (3) supervised physical custody"). In this instance, the most analogous provision regarding Paternal Grandmother's care of Child is partial physical custody, which the Act defines as "[t]he right to assume physical custody of the child for less than a majority of the time." 23 Pa.C.S. § 5322(a).

discretion, to utilize third parties, including Grandmother, to care for Child during his custodial time.[9]  In short, we discern no merit to Mother's argument that the trial court awarded Grandmother any form of custody.

Moreover, the trial court's decision was guided by Child's best interests. In concluding that it would not include a right of first refusal, the trial court focused on the fact that Father has the freedom to choose what is most convenient for him in terms of childcare while also allowing Father to maintain the important long-standing bond between Grandmother and Child.  **See** Trial Ct. Op. at 3.  After a review of the record, we conclude that the trial court did not abuse its discretion when it did not to include a right of first refusal in its May 14, 2019, custody order.

Order affirmed.

_____

[9] Mother's argument suggests that, in all instances, a parent must be given the option to take custody of their child from a care provider.  However, in **Johnson v. Lewis**, 870 A.2d 368 (Pa. Super. 2005), a case predating the Act, the mother argued that the trial court should have made a provision for her to have physical custody during the periods when the father worked the night shift.  **Id.** at 374.  Relatedly, the panel considered whether the trial court erred by allowing any third party, even a competent nanny, to care for the child when the father worked overnight, where the mother, a fit parent, would be available to watch the child.  **Id.** at 374-75.  The panel examined the number of waking hours that the child would spend with both parents under the trial court's order if the father would work the night shift.  **Id.** at 375.  The panel determined that it would disrupt the child's stability to provide the mother with custodial time during the nights when the father would work.  **Id.** The panel held that maintaining the stable consistency of a weekly shift in physical custody, even if the father would alter his work schedule, was reasonably in the child's best interest.  **Id.**

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/28/2020