J-A04014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NICOLE MARRA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH JACOBS | : | |
| | : | |
| Appellant | : | No. 1199 MDA 2024 |

Appeal from the Order Entered August 5, 2024
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201905415

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:               **FILED: JUNE 18, 2025**

Keith Jacobs (Father) appeals from the order, entered in the Court of Common Pleas of Luzerne County, granting Appellee Nicole Marra (Mother) primary physical custody and Mother and Father shared legal custody of the parties' minor child, R.J. (Child) (born June 2018), with Mother having "specific, limited sole legal custody granting her the right to make all appointments and decisions regarding the vaccination of [C]hild for the school[-]required[,] state[-]mandated vaccinations."  Order, 8/5/24, at 1. After careful review, we affirm.

Mother resides in Hanover Township with her parents, Child's maternal grandparents.  Father resides in Harvey's Lake borough, Dallas Township.  The parties met in 2016 and dated on and off for approximately two years.  Although they never married, Mother and Father are Child's parents.  The parties lived together for five months following Child's birth in June 2018.

Following their separation, Mother filed a complaint in custody against Father in May 2019. Mother's complaint sought primary physical and shared legal custody of Child. *See* Complaint, 5/9/19, at ¶ G.

Following a conciliation conference, the court entered an interim custody order granting Mother and Father shared legal and physical custody on a four-week repeating schedule. *See* Interim Order, 7/17/19, at 1-2. On February 17, 2022, Mother filed a petition to modify the interim order seeking primary physical and sole legal custody of Child "subject to [Father's] periods of partial custody." Petition to Modify, 2/17/22, at 2 (unpaginated). In April 2022, the court ruled upon Mother's petition and determined that the interim custody order remained in full force and effect.

In June 2024, the trial court held a custody trial at which Mother and Father testified.[1] On August 5, 2024, the court entered the final custody order granting Mother and Father shared physical and legal custody, with the caveat that Mother would have the right to make all appointments and decisions regarding Child's state-mandated school vaccinations. Father filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925 concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i). Father presents the following issues for our consideration:

> (1) Did the trial court abuse its discretion or commit an error of law in its August 5, 2024 [o]rder by improperly taking judicial notice of facts not introduced in the record during

---

[1] On June 29, 2024, the court held a "school choice" hearing where the parties testified regarding which school district they believed would be in Child's best interests to attend.

> any hearing and taking away a portion of legal custody from Father?
>
> (2)  Did the trial court abuse its discretion or commit an error of law in its August 5, 2024 [o]rder by transferring primary physical custody for purposes of stability without making any changes to the custodial schedule?
>
> (3)  Did the trial court abuse its discretion or commit an error of law in it August 5, 2024 [o]rder by using inaccurate information and drawing unreasonable conclusions with respect to its analysis related to 23 Pa.C.S.A.§[§] 5328(a)(3), (4), (5), (9), (10), and (12)?

Father's Brief, at 6.

"Our paramount concern in child custody cases is the best interest of the child." *M.A.T. v. G.S.T.*, 989 A.2d 11, 19 n.9 (Pa. Super. 2010) (en banc) (citation omitted).  Our standard of review of custody matters is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law[] or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

> [Moreover,] the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.  Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Finally,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T.***, 989 A.2d at 18-19 (citations omitted).

Father first claims that the trial court abused its discretion by taking "*sua sponte* judicial notice of [the] C[enters for] D[isease] C[ontrol (CDC)] guidelines [in making the decision to give Mother exclusive authority to vaccinate Child] after the record was closed and removing a portion of Father's legal custody without Father having the opportunity to be heard on the matter." Father's Brief, at 18.

It is well-established that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b)(1)-(2). Moreover, a trial court "may take judicial notice on its own . . . at any stage of the proceeding." ***Id.*** at (c)(1), (d). However, when material facts are in dispute, "judicial notice may not be used to deny a party an opportunity to present contrary evidence." ***220 Partnership v. Philadelphia Elect. Co.***, 650 A.2d 1094, 1097 (Pa. Super. 1994); ***see also*** Pa.R.E. 201(e).

- 4 -

Instantly, in its Rule 1925(a) opinion, the trial court references the CDC guidelines "for the purpose of emphasizing the necessity of vaccinations in children to prevent serious illness in children." Trial Court Rule 1925(a) Opinion, 9/26/24, at 16; *id.* at 10-11 (citing to National Vaccine Program, codified at 42 U.S.C. § 30011-1, indicating "[f]ederal law mandates safer childhood vaccines that result in fewer and less serious adverse reactions . . . to [advance purpose of] achiev[ing] optimal prevention of human infectious disease through immunization"); Trial Court Custody Order and Opinion, 8/5/24, at 13-15 (citing CDC website stating "[o]n-time vaccination through childhood is essential because it helps provide immunity before children are exposed to potentially life-threatening diseases" and "[v]accines are tested to en[s]ure that they are safe and effective for children to receive at the recommended ages"). The court was careful to craft a narrow caveat in its final custody order, awarding Mother legal custody over decisions related to Child receiving vaccinations by only giving Mother the decision-making ability for "state-mandated, school[-]required vaccinations." Order, 8/5/24, at 15.

Instantly, the court took judicial notice of the CDC's vaccination information because material facts regarding the safety of childhood vaccines were in dispute between the parties. Specifically, Father testified the he was opposed to Child being vaccinated, stating that "44 percent of parents now are vaccine[-]hesitant across the globe [and that t]he only statistics that don't change is China and one other [country]." N.T. Custody Trial, 6/24/24, at 34-35. Father further testified that in researching the vaccination issue on the

internet, he uncovered that "[t]he International Pediatric Society [ha]s called for a moratorium on all childhood vaccinations [and] multiple studies . . . show[] the difference between vaccinated and non-vaccinated kids [that] show[] non-vaccinated children have ra[d]ically lower rates of chronic stickiness, autism[,] and [a]llergies." *Id.* at 88. Father also testified, based on his own non-expert opinion, that "vaccinations have a chemical in there that allows [soft metals] to bypass the brain blood barrier." *Id.* However, Father presented no medical evidence or expert testimony to support his belief regarding the risk of vaccinating children.[2]

Because the CDC's information regarding the efficacy and safety of childhood vaccines is a "source[] whose accuracy cannot [] reasonably [be] questioned," Pa.R.E. 210(b), we find no error in the court taking judicial notice of those facts own its own. *Id.* at (c)-(d). Moreover, contrary to Father's assertion, he was not prevented from presenting his own expert testimony or medical evidence to rebut the CDC's information during trial. In fact, at the conclusion of the first day of the custody trial, the court instructed the parties to brief "the vaccine issue and the stances of the parties[,] . . . in particular with regard to [Mother] requesting to vaccin[ate Child] and then Father's opposition to the vaccination[s,] by July 22nd[.] "[3] N.T. Custody Trial, 6/24/24,

---

[2] Notably, there was no evidence in the record showing that Child has any medical condition for which vaccines would be contraindicated.

[3] The court also asked the parties to brief the issue regarding Mother's request for sole legal custody.

at 106-08. Father's counsel, Matthew Loftus, Esquire, who did not object to briefing the issue, submitted a letter brief to address those issues. *See id.* at 108; *see also* Letter Brief by Matthew Loftus, Esquire, 7/22/24, at 2-3 (unpaginated). While Attorney Loftus states in the letter brief to the court that "[n]othing was presented within the record to allow the court to make a finding that vaccination was in the best interests of the minor child based upon medical certainty," there was also nothing presented to the court to support Father's position that vaccinations were *not* in Child's best interests based upon medical certainty. *But see* Letter Brief by Joseph F. Saporito, Sr., Esquire, 7/22/24 (Mother's counsel stating Child has not received vaccinations contrary to recommendations of Child's pediatrician due to Father's continuing opposition to vaccinations). In light of the foregoing, Father is entitled to no relief.

In his next issue, Father contends that the trial court erred by transferring primary physical custody of Child to Mother "for purposes of stability" without making any changes to the parties' custodial schedule. Father's Brief, at 6. Father argues that the court's change of the custody schedule, in title only,[4] "effectively only moved [C]hild from a superior school district to an inferior school district." *Id.* at 17.

---

[4] Notably, the court's order did not change physical custody "in name only." In fact, the court changed the provision, found in the interim custody order, that permitted the parties to exercise a 48-hour block of physical custody during the other parent's two-week block by agreement with a minimum of 24-hours' advance notice. In its final custody order, the court only permitted
*(Footnote Continued Next Page)*

Instantly, the trial court found Mother "is very much involved in caring for [C]hild" and that, during Mother's periods of physical custody, Father "works ninety-hours a week and is not in town" to aid in transporting Child to and from school. Trial Court Rule 1925(b) Opinion, 9/26/24, at 4. The court also noted that the school district Father preferred Child attend is thirty minutes from Mother's home. *Id.* Accordingly, the court concluded that the Hanover Area School District, which is "only minutes" from Mother's home provides Child with the necessary "consistency and stability" he needs and which is in his best interests. *Id.* at 4-5. The trial court's rationale regarding the district where Child will attend school is not manifestly unreasonable based upon the evidence of record. *Fox v. Garzilli*, 875 A.2d 1104 (Pa. Super. 2005) (where mother would have "burdensome commute" to transport children to school in father's school district, court erred by not ruling children should attend school in mother's school district). Thus, we find no error. *See Arnold v. Arnold*, 847 A.3d 674, 677 (Pa. Super. 2004) (paramount concern in child custody matters is best interests of child).

In his final issue, Father argues that the trial court abused its discretion "by using inaccurate information and drawing unreasonable conclusions with respect to its analysis [of custody factors enumerated in subsections]

_____

Mother to have the ability to exercise the 48-hour block of custody during Father's custodial time, with 24-hours' notice—resulting in Mother gaining an additional two days of custody during Father's two-week custodial period. *See* Order, 8/5/24, at 2.

5328(a)(3), (4), (5), (9), (10), and (12)."[5]  Father's Brief, at 6.  However, in

his Rule 1925(b) statement, Father only raised the issue that "[t]he trial court

_____

[5] Section 5328 enumerates a non-exclusive list of factors that a trial court must consider before making any custody determination.  Those factors are:

**(a) Factors. --** In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1), and (2.2)[,] which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life[,] and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

*(Footnote Continued Next Page)*

erred as a matter of law in relying on factual inaccuracies in the record to support its position." Rule 1925(b) Statement, 8/22/24, at ¶ 4. Because

_____

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity[,] and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. §§ 5328(a)(1)-(16).

Father failed to "point[] to what those factual inaccuracies are," the trial court found the Rule 1925(b) statement vague and, as a result, was "not able to respond to that claim." Trial Court Rule 1925(b) Opinion, 9/26/24, at 8. ***See also*** Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert **with sufficient detail to identify the issue to be raised for the judge**") (emphasis added).

Due to Father's failure to identify exactly what factual inaccuracies the trial court relied upon to support its final custody order, we agree with the trial court that Father's claim is waived. ***See*** Comment to Pa.R.A.P. 1925(b)(4) ("Statement should be sufficiently specific enough to allow the judge to draft the opinion required under [Rule] 1925(a).").[6]

Order affirmed.

---

[6] Even if we did not find Father's final issue waived, we would conclude that it is meritless. ***See*** Trial Court Custody Order and Opinion, 8/5/24, at 5-8 (court finding custody factors 3, 4, 5, 9, 10 and 12 weigh in Mother's favor where: (1) Mother is responsible for majority of Child's medical care, dental care, and appointments, and Mother is expected to be available for Child at all times since Father works out of state; (2) Mother provides more structure to Child's life due to her availability and is more involved in Child's education; (3) Mother's extended family is "all-hands-on-deck" and "very involved" with Child; (4) Mother credibly testified she is extremely bonded with Child and meets his emotional needs in a different way than Father; (5) Mother handles majority of Child's physical, medical, and educational needs; and (6) Mother is more available for childcare).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>06/18/2025</u>