J-A10016-18

2018 PA Super 156

| S.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.F. | : | |
| | : | |
| Appellant | : | No. 3111 EDA 2017 |

Appeal from the Order Entered September 6, 2017
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2015-61893

| S.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | |
| | : | |
| K.F. | : | |
| | : | |
| | : | No. 3408 EDA 2017 |

Appeal from the Order Entered September 6, 2017
In the Court of Common Pleas of Bucks County Family Division at No(s):
2015-61893

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

OPINION BY McLAUGHLIN, J.:                    **FILED JUNE 07, 2018**

S.S. ("Father") and K.F. ("Mother") cross-appeal from the Amended Custody Order entered in this case. We vacated the Order on May 8, 2018, and ordered the trial court to schedule a hearing on the issues of primary custody and school choice within 45 days of our Order.[1] We now issue this

---

*   Retired Senior Judge assigned to the Superior Court.

[1] The parties filed a joint application for remand on May 2, 2018.

decision. We conclude that the trial court abused its discretion in ordering the parties to keep their children enrolled in a school district where neither party resides, and in ordering the parties to split the cost of the resulting public school tuition.

Father and Mother are the biological parents of three children: A.S. (born 2005), K.S. (born 2007), and M.S. (born 2009) (collectively, "the Children"). Father and Mother were never married, and separated in 2011. After that time, Mother resided in Levittown, and Father in Bensalem. Both residences were in Lower Bucks County, approximately eight miles apart. **See** Amended Order, 8/31/17, at 15.

For several years following their separation, the parties shared physical custody of the Children informally. Aside from Sunday evenings, which were always spent with Mother, the Children spent equal time with each parent. Mother would exercise custody of the Children after school and day care on Mondays and Wednesdays until the following morning, and every other weekend following school and daycare on Friday until Monday. Father would exercise custody after school and day care on Tuesdays and Thursdays until the following morning, and every other weekend following school and daycare on Friday until Sunday evening. The older Children attended school in Pennsbury School District, where Mother resided.

In October 2015, Father filed a petition for custody. Father asked the court to grant the parties shared legal and physical custody, and that the Children receive equal time with both parents. The trial court held a hearing

in March 2016, after which it ordered the parties to undergo evaluation by Court Conciliation Evaluation Services ("CCES"). It also ordered them to continue with the same custody arrangement.

Mother filed a Petition for Relocation in June 2016, in which she stated that she desired to move to East Coventry, Chester County to live with D.S., her boyfriend. D.S.'s home is approximately 54 miles from Father's home in Bensalem. *See* Amended Order at 15. Mother proposed that the court modify the custody arrangement to give Mother primary custody, with Father exercising custody every other weekend. She also proposed that the Children be enrolled in Owen J. Roberts School District. Mother contended that D.S.'s large house and yard in Chester County would provide a better quality of life for the Children than her small apartment in Levittown. She also maintained that Owen J. Roberts School District is superior to both Pennsbury School District and Bensalem School District, and generally argued that she has always been the primary caretaker of the Children and is a better parent than Father.

The court held a custody trial spanning three days in July 2017. At trial, Mother testified that she lost her job in April 2017, and, due to her unemployment, did not renew her lease in Levittown. Mother stated that she was financially unable to remain in Bucks County, and had already begun living with D.S., whom she married in January 2017. Mother asserted various reasons why, in her view, it would serve the best interests of the Children for

Mother to have primary custody and for the Children to attend schools in Owen J. Roberts School District.

Father not only opposed Mother's Petition, but also sought primary custody and requested that the Children enroll in Bensalem School District, where Father resides. Father set forth reasons why Mother's relocation request should be denied, including Father's history of parenting the Children nearly 50% of the time and the preservation of the Children's familial and social ties. Father testified that his income is roughly $38,000 per year, and that he pays Mother court-ordered monthly child support.

Father also asserted that if Mother relocated to Chester County, he would be willing to move from Bensalem to Pennsbury School District. Father's counsel characterized Father's position to be that "if Father had primary custody here in the Lower Bucks area, and Mother moved to the [Chester County] area, that . . . if it turns out that the Court feels that the Bensalem school system is not appropriate for the [C]hildren, . . . then he would list the house within 90 days in an attempt to move to the Pennsbury School District which is a quality school in that area and would not interfere with his business in terms of location." N.T., 7/13/17 (A.M.) at 29-30.

The court entered a Custody Order on August 11, 2017. In the Order, the court discussed the relocation factors under 23 Pa.C.S.A. § 5337(h) and denied Mother's request to relocate. The court found that Mother's move was motivated by her relatively new marriage, which did not justify disruption to the Children's schooling or access to friends and relatives. The court also

concluded that Mother sought to minimize Father's contact with the Children, whereas the court believed that it was "in the best interest of the Children to maintain a substantial relationship with both parents as they have throughout their lives." Order, 8/11/17, at 9.

The court then discussed the custody factors of 23 Pa.C.S.A. § 5328(a) and awarded the parties equal physical custody, which was to be exercised on a rotating weekly basis.

Regarding the Children's education, the court ordered that the Children remain enrolled in Pennsbury School District, because "educational stability is in the Children's best interests." Order, 8/11/17, at 18. In making this determination, the court stated it relied in part on "Father's testimony that he and his new wife would list their current house for sale and move into Pennsbury School District should the Court deny Mother's relocation as Father desired to have the Children remain in Pennsbury School District." *Id.* The court ordered that "one (1) or both parents shall continue to reside within the District or shall otherwise ensure compliance with this Order in the best interests of the Children." *Id.* at 19.

Both parties filed Motions for Reconsideration of the Order, on the basis that neither party resided in Pennsbury School District. Mother filed a Petition for Contempt based on Father's failure to move into Pennsbury School District. Father likewise filed a Petition for Contempt, arguing that Mother was exercising partial custody of the Children in Chester County despite the court's purported denial of her Relocation Petition.

The court denied the Motions for Reconsideration by order entered September 6, 2017, and issued an Amended Custody Order. This Order was nearly identical to the August 11 Order, except that instead of ordering one or both parents to "continue" to reside in the Pennsbury School District, it directed the parties to "arrange their respective residential situations so that the Children's school district will remain unchanged." Amended Order, 9/6/17, at 18. The Amended Order elaborated that "[e]ither parent may reside wherever they deem in the best interest of the Children during their respective custodial periods but shall be responsible for all transportation to and from Pennsbury School District for all classes and activities." *Id.* at 20. The Amended Order also stated that "[i]n the event neither party chooses to reside in Pennsbury School District, then the parties shall be responsible for the payment of tuition in equal shares." *Id.* at 19.

The court subsequently held a hearing on September 11, 2017, on the Contempt Petitions. The court clarified that its denial of Mother's Petition for Relocation applied only to relocation insofar as it would alter the Children's place of schooling, and not to where the Children would reside during Mother's partial custody time. N.T., 9/11/17, at 7. The court explained that the Amended Order was designed to allow Mother to live in Chester County without affecting Father's ability to exercise partial custody in Bucks County, and noted that the intent of the relocation statute is to minimize the impact on the ability of the parties to exercise custody. The court also stated that its

decision was based on the best interests of the Children, and not grounded on the intention of either party to reside in Pennsbury School District. ***Id.*** at 20.

Mother's counsel argued at the hearing that because neither party resided within Pennsbury School District, the cost of tuition for the Children to attend school was $4,069 per month, which created "a financial hardship and impossibility" for both parties. ***Id.*** at 4. Father's counsel stated that Father had only offered to move to Pennsbury School District if he were awarded primary custody. The court responded that that was "not the way [the court] heard it," but that Father's desire to have primary custody was irrelevant to the court's decision to retain the Children in Pennsbury School District. ***Id.*** at 10. The court stated, "[I]f neither of the parents ever want to move into the Pennsbury School District, I guess that's their choice." ***Id.*** at 10.[2]

Father's counsel questioned whether the court could allocate the tuition cost evenly between the parties, rather than deferring the matter to be handled through the child support action. ***Id.*** at 38. The court stated that it had not intended to make its school choice decision "as a financial issue," or to preclude the tuition cost from being addressed through the support action. ***Id.*** at 41. The court acknowledged that the allocation ought "to be fair according to the parties' income, *et cetera*." ***Id.*** at 40 (italicization added).

_____

[2] The court also stated that if neither parent could afford the tuition, that the parties should wait until the Pennsbury School District was "ready to kick the kids out," before returning to court. N.T., 9/11/17, at 26.

Mother and Father withdrew their contempt petitions, and filed timely cross-appeals of the Amended Order. On appeal, Mother raises the following issues:

[1.] Did the trial court abuse its discretion by relying on a stale CCES Report that was almost a year old to determine the parties' current circumstances, relationships, schedules, and current custody factors in establishing the Court Order[?]

[2.] Did the trial court abuse its discretion by requiring the parties to keep their children in a school district where neither party w[as] currently living, and requiring the parties to pay the out of pocket tuition for said enrollment[?]

[3.] Did the trial court abuse its discretion and/or commit an error of law by denying [Mother's] request for relocation[?]

[4.] Did the trial court abuse its discretion and/or commit an error of law by asserting facts that were not in evidence regarding the "Wrap Around Service," "IEP Services," and the parties' custody schedule, none of which were presented on the record?

Mother's Br. at 3-4 (suggested answers omitted). Father raises the following:

1. Was the Court's decision to issue a 50/50 shared physical custody order whereby the children alternated residences on a weekly basis between Bensalem Pa. (Father's home) and [East Coventry], Pa. (Mother's home), 108 miles round trip, not in the [C]hildren's best interest and therefore an abuse of discretion?

2. Did the Court abuse [its] discretion by requiring the parties['] three [C]hildren to remain in the Pennsbury public school system (where Mother formerly resided) and ordering both parents to share the assessed cost of tuition to nonresident parents?

3. Did the Court, in light of its findings relative to the statutory custody and relocation factors, abuse [its] discretion by failing to award Father primary physical custody?

Father's Br. at 3 (answers below omitted).

We begin with a review of the trial court's decision that the Children should remain enrolled in Pennsbury School District and that the parties share the financial burden of the tuition equally, as this issue was raised by both parties, and we find it to be dispositive. Father argues that the cost of tuition, in light of the testimony regarding his salary and support payments, made the court's decision manifestly unreasonable. Moreover, according to Father, the court failed to adhere to the child support statute when it failed to assess the parties' ability to afford the tuition, allocate the cost according to the support guidelines, or provide adequate notice that the court would be addressing a significant financial matter at the custody hearing. Mother agrees that neither party should have been ordered to pay for public school. She further argues that the evidence established that she moved to Chester County because she could not afford to remain in Bucks County.

When we review a custody order, we accept the factual findings of the trial court that are supported by competent evidence of record and we defer to the trial court's weighing of the evidence. **D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa.Super. 2014). However, we are not bound by the trial court's decision where it is "unreasonable in light of the sustainable findings of the trial court," and may reject the trial court's conclusions that involve an error of law or an abuse of discretion. **Id.** (quoting **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa.Super. 2011)). Our scope of review is plenary. **Id.**

The Child Custody Act provides that when a custodial party seeks to relocate a child's residence, the party must petition the court, and the court

must consider the relocation factors of Section 5337(h). 23 Pa.C.S.A. § 5337(h).[3] If the proposed relocation will result in a change in custody, the court must also consider the custody factors in Section 5328(a). **See A.V. v. S.T.**, 87 A.3d 818, 822-23 (Pa.Super. 2014). "Several of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a)." **D.K.**, 102 A.3d at 476-77. A court should avoid "dissociating the issue of primary custody from the issue of relocation," and should instead decide the two issues together "under a single umbrella of best interests of the children." **S.J.S. v. M.J.S.**, 76 A.3d 541, 550 (Pa.Super. 2013) (quoting **Collins v. Collins**, 897 A.2d 466, 473 (Pa.Super. 2006)).

When parties cannot resolve a dispute about where to educate their children, the court may act as arbiter to decide that issue, based on the best interests of the children. **See S.W.D. v. S.A.R.**, 96 A.3d 396, 403-04 (Pa.Super. 2014). If the court is addressing a request to modify custody in conjunction with the choice of school, the court's choice of school may factor into the court's custody decision. **Id.** at 403. The court's choice of school may in fact require it to modify the parties' physical custody award, in particular "when the parties live far apart, making it impractical for one parent to transport the child to school." **Id.** at 404 n.6. Continuity in an educational environment is an important, but not controlling, factor to be considered by

_____

[3] These factors incorporate and expand upon the relocation analysis previously outlined in **Gruber v. Gruber**, 583 A.2d 434 (Pa.Super. 1990). **Commonwealth v. Childs**, 142 A.3d 823, 832 (Pa. 2016).

the court in making a school or custody decision, and over-emphasis on this factor may constitute an abuse of discretion. ***Fox v. Garzilli***, 875 A.2d 1104, 1110 (Pa.Super. 2005).

A court may order parents to pay for the cost of school tuition as an additional expense to the standard child support award. ***See*** Pa.R.C.P. 1910.16-6 (providing for allocation of additional expenditures).[4] However, the court may order a party to pay the cost of tuition only after the court determines that doing so is reasonable in light of the parties' respective incomes and expenses. ***See*** Pa.R.C.P. 1910.16-6(d)(1).[5] An order directing a party to pay for tuition, like any support order, "must be fair, non-confiscatory and attendant to the circumstances of the parties." ***Spahr v. Spahr***, 869 A.2d 548, 552 (Pa.Super. 2005) (quoting ***Fennell v. Fennell***, 753 A.2d 866, 868 (Pa.Super. 2000)).[6]

The parties are entitled to notice and a hearing before the court orders payment of tuition. ***See*** Pa.R.C.P. 1910.6 (requiring notice of "support obligations that might be established or modified"); Pa.R.C.P. 1910.10-

---

[4] ***See also*** Pa.R.C.P. 1910.16-6(d) ("Expenditures for needs outside the scope of typical child-rearing expenses, [*e.g.*], private school tuition . . . have not been factored into the Basic Child Support Schedule").

[5] ***See also*** 23 Pa.C.S.A. § 4322(a); ***R.C. v. J.S.***, 957 A.2d 759, 763 (Pa.Super. 2008) ("The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses").

[6] ***Accord J.P.D. v. W.E.D.***, 114 A.3d 887, 892 (Pa.Super. 2015) ("[A] support order should allow for reasonable living expenses of the paying parent and not be punitive or confiscatory") (quoting ***Sutliff v. Sutliff***, 489 A.2d 764, 771 (Pa.Super. 1985)).

1910.12 (outlining hearing procedures). If the court concludes a tuition expense to be reasonable, it must allocate the cost in proportion to the parents' incomes. *See* Pa.R.C.P. 1910.16-6(d)(1).

Here, Mother's Petition for Relocation included three requests: (1) to exercise custody in Chester County, (2) to be awarded primary custody, and (3) to enroll the Children in Owen J. Roberts School District. Although the court granted Mother permission to exercise her partial custodial periods in Chester County, it denied her requests as to primary custody and school choice. The court noted that Mother's move alone, without a change in school, would have no bearing on Father's ability to exercise partial physical custody. The court therefore allowed Mother to move to Chester County, while purportedly denying a "relocation," as the Child Custody Act defines that term. *See* 23 Pa.C.S.A. § 5322.[7]

However, in allowing Mother to move to Chester County, but ordering the Children to stay enrolled in Pennsbury School District, the court created an additional expense that neither party requested or expected. And, because at the time of the hearing, the court considered school choice as a custody issue only, it made scarce inquiry into the parties' financial situations. It made no finding that the tuition expense was "reasonable," and on this record, we fail to see how it could have done so. The court also failed to allocate the

---

[7] "A change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322.

tuition cost in accordance with the support statute. The court thus abused its discretion.

Although the court stated that its decision did not rely on Father's statements that he would be willing to move to Pennsbury School District if granted primary custody, it appears that the court was attempting to drive a compromise between the parties. However, the parties informed the court that they had reached no such compromise. The resultant tuition cost thus existed due to the court's decision alone. The court's choice of school, made without regard to the financial ramifications to the parties—and, by extension, to their Children—ignored the realities of the case.

On remand, unless the parties request otherwise, the court must choose a school that does not financially burden the parties, and it must make its decision by considering both the relocation and custody factors. Given our disposition and the proceedings pending before the trial court, we do not address the remaining issues.

Order vacated and case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/18

- 13 -