J-A01009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.G. | : | |
| | : | |
| Appellant | : | No. 2273 EDA 2019 |

Appeal from the Order Entered July 9, 2019
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 3047 CV 2014,
No. 90 DR 2014

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY NICHOLS, J.:                                    **FILED JUNE 08, 2020**

S.G. (Mother) appeals the order denying her petition for relocation to Philadelphia as moot and awarding Mother and R.H. (Father) shared physical and legal custody of their minor sons, J.H., born in May 2004, and E.H., born in August 2007 (collectively, Children).  The order also directed that Father would have primary physical custody of Children if Mother moved out of Children's current school district.  We affirm.

By way of background, Mother and Father were married and had four children: M.H. and R.H., Jr., who were both over eighteen years old and not the subjects of the instant custody order, and Children.  Mother and Father separated in 2014, and their divorce became final in 2018.  Mother and Father

_____

* Retired Senior Judge assigned to the Superior Court.

have shared legal custody of Children, and Mother has had primary physical custody of Children with Father having partial physical custody. Mother and Father currently live in the East Stroudsburg (South) school district.

In June 2017, Mother filed a notice of a proposed relocation to Delaware. Father objected and filed a counter-affidavit. Father also filed petitions for contempt, which the trial court denied, as well as a petition to modify custody. Following a hearing, the trial court denied Mother's request for relocation and Father's petition for modification.[1] *See* Order, 12/6/17.

On January 16, 2019, Mother filed a *pro se* notice of proposed relocation to Philadelphia, indicating that she was getting married in August 2019, and intended to purchase a home. Father objected *pro se* and filed a counter-affidavit.[2] The trial court scheduled a hearing on Mother's request for

_____

[1] Mother and Father were both acting *pro se* when Mother requested, and Father opposed, relocation. Additionally, both Mother and Father filed *pro se* petitions for contempt following the trial court's denial of Mother's petition to relocate to Delaware. On May 30, 2018, the trial court entered an interim order awarding Mother primary physical custody of Children and Father partial physical custody on the first, second, and fourth weekends of every month from Friday at 8:00 p.m. to Sunday at 8:00 p.m. *See* Order, 5/30/18.

[2] Father filed also filed *pro se* petitions for modification of custody. On March 21, 2019, the trial court entered an interim order awarding Mother primary physical custody of Children and Father partial physical custody on the first, second, and fourth weekends of every month from Thursday at 8:00 p.m. to Sunday at 8:00 p.m. *See* Order, 3/21/19.

relocation for April 22, 2019. Father obtained counsel before the hearing,[3] while Mother remained *pro se*.

On April 22, 2019, the day of the hearing, Father's counsel filed a petition for modification seeking primary custody of Children. Pet. to Modify Custody, 4/22/19, at 1 (unpaginated). In his petition, Father asserted that Mother intended to relocate to Philadelphia, and that Father was "gainfully employed and . . . prepared to take full custody of [Children] if Mother is intent on leaving Monroe County." *Id.* at 2.

The trial court commenced the April 22, 2019 hearing at which Father appeared with counsel and Mother appeared *pro se*. Mother stated that there was "change in the relocation," and she no longer wanted to move to Philadelphia, and that she was instead planning to "move within Monroe County." N.T., 4/22/19, at 4. Mother asserted that she filed papers with the court the week before the hearing and submitted them to the judge's chambers.[4] When the trial court asked whether she intended to move out of the East Stroudsburg (South) school district, Mother responded, "It might not be. I might be looking potentially towards Pocono Mountain West or so." *Id.* at 10. Mother explained that she had some information regarding her intended move, but she wanted to "first make sure all was set" with respect

---

[3] Father's counsel stated that Father retained her one week before the hearing.

[4] The record does not contain filings associated with Mother's planned move within Monroe County.

to custody before she "started putting down a lease and things like that." ***Id.*** at 11.

The trial court thereafter heard testimony from Father regarding his petition for modification of custody and from Mother regarding her possible move to the Pocono Mountain West school district. Mother testified that she believed Pocono Mountain West school district was equivalent to the East Stroudsburg (South) school district. The trial court also examined Children individually. Children both expressed a preference to live with Father and remain in the East Stroudsburg (South) school district. The trial court permitted the parties to submit additional evidence regarding the two school districts, but the record contains no indication that Mother or Father presented the trial court with further evidence.

By an opinion and order dated July 8, 2019, and entered July 9, 2019, the trial court concluded that Mother's relocation request was moot because she stated she no longer intended to move to Philadelphia and only wished to move within Monroe County. The trial court reviewed the sixteen custody factors under 23 Pa.C.S. § 5328 and maintained shared legal custody of Children between Mother and Father. The trial court further awarded the parties shared physical custody, with Mother retaining primary physical custody of Children "provided she resides in the East Stroudsburg (South) School District." Op. & Order, 7/9/19, at 13. Father's partial custody schedule included the first, second, and fourth weekends of the month from Friday at 6:00 p.m. to Sunday at 6:00 p.m., and every Wednesday from 5:00 p.m. to

- 4 -

8:00 p.m. The order directed that if Mother failed to reside in the East Stroudsburg (South) school district, then primary physical custody would immediately be transferred to Father, with Mother assuming partial custody under the schedule set for Father's partial custody. *Id.*

Mother timely filed a counseled notice of appeal on August 7, 2019, and a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Although the trial court awarded Mother primary custody in the event she remained in East Stroudsburg (South) school district, Mother raised nine issues claiming that the trial court erred in failing to award her primary custody of Children.

The trial court filed a Rule 1925(a) opinion noting in relevant part that it did not grant Father's petition to modify custody seeking primary custody. Trial Ct. Op., 8/23/19, at 1-2. The trial court emphasized that it

> considered and determined that it was in [Children's] best interest to remain in their current school district. Both [Children] are teenagers and expressed a strong desire to avoid a change in school. With that determination, Mother could remain in the same school district or, if she wished to relocate, primary physical custody would revert to Father who lives in [Children's] current school district.

Trial Ct. Op., 8/23/19, at 2.

Mother raises the following issues on appeal:

> The [t]rial [c]ourt erred and abused its discretion and failed to properly weigh or consider significant evidence of record when it awarded primary physical custody of [Children] to Father.

Mother's Brief at 6.

- 5 -

Mother challenges the trial court's determination that Father would assume primary physical custody if she moved out of the East Stroudsburg (South) school district. Mother asserts that this alternative custody provision was

> largely based on a conclusion that [Children] had expressed a strong preference for remaining in their home school district and for living with Father, based, at least in significant part, on the older child's desire to participate in sporting activities and upon [Father's] testimony and promise that he would be an appropriate caregiver with respect to supervising [Children's] academic performance.

*Id.* at 8.

> Mother claims that
>
> Father has an extremely poor track record and had shown little to no real interest in taking any responsibility for [Children's] academic performance. Moreover, [Children's] expressed preference for residing with Father is not well-reasoned and does not ultimately serve their best interest. Specifically, the [Children] appeared to base their preference on a desire to be involved in sporting activities and based on friendships they had in their neighborhood. Those preferences, which appear to short change academics, when weighed against Mother's credible and compelling reasons for wanting to move to a new neighborhood should not have been controlling. In short, [Children's] long-term best interests are best served by insuring that Mother remain the primary caregiver, especially where academic performance is concerned.

*Id.*

Mother argues that the trial court erred in evaluating numerous custody factors. Referring to Section 5323(a)(3) and (4), respectively, Mother contends that the trial court erred in concluding that both parties were

involved with Children's care, education, and activities and that both parties could provide for stability and continuity in their education, family life, and community life. Mother asserts that the record instead demonstrated that she was primarily involved in attending to Children's daily needs and has "historically been the only parent who has been involved in any meaningful capacity with [Children's] school and academic performance." *Id.* at 9. According to Mother, "Father does not attend parent/teacher conferences and has never communicated with [Children's] teachers regarding their grades or academic performance." *Id.* at 9-10 (record citations omitted).

Discussing Section 5323(a)(12), Mother contends that the trial court erred in its consideration of the parties' availability to care for Children or make appropriate child care arrangements. Mother argues that the trial court erred in concluding that this factor favored Father when Father testified that he relied on a sibling to care for and transport Children. Mother testified that the sibling "is not reliable, drives in an unsafe fashion with Children . . . , and should not be depended upon to provide the nature and extent of child care for which [the sibling] is utilized by [Father]." *Id.* at 10 (record citations omitted).

Moreover, Mother asserts that the trial court erred in finding that Section 5323(a)(13), which is related to the level of conflict between the parties, was equally balanced between the parties. Mother claims that the trial court ignored evidence of a history of a protection from abuse order against Father

- 7 -

"relating to actual physical abuse by him of her in the presence of [Children]." *Id.* at 11.

Mother further contends that Children's long-term best interests, including academic, favor Mother being awarded primary physical custody outside the East Stroudsburg (South) school district. *Id.* at 7-8. She argues:

> In this particular case[,] the [t]rial [c]ourt interviewed [Children] and noted that both expressed a preference for remaining in their current school. The [c]ourt advances no argument and makes no specific findings as to whether the school in question is better or worse than the school Mother would enroll them in if allowed to move with them as she requests. Based on the overwhelming evidence of record that Mother has been the consistent primary caregiver for most of the [C]hildren's lives and that she is the only parent who will, in any meaningful fashion, make the necessary and tough decisions regarding the academic performance, it is respectfully submitted that the [t]rial [c]ourt over[]emphasized continuity in this particular school environment and[,] to the extent that the decision to award primary physical custody to Father in the event Mother moves out of the school district, that decision constitutes over[]emphasis on that particular factor and an abuse of discretion.

*Id.* at 12-14. Mother points to her role as the parent more concerned with school performance and willing to make tough, unpopular decisions, and she suggests this is more important than school selection. *Id.* at 14, 18. Mother further questions the Children's motives for their preferences, given their desire to participate in sports. *Id.* at 15-16. Lastly, Mother asserts her rationale for moving was to secure a larger home in an environment away from drug dealers, which she argues is in the Children's future best interests, despite their current desires. *Id.* at 16-18.

Father responds in his *pro se* brief that the trial court did not abuse its discretion when imposing an alternative custody provision. **See** Father's Brief at 8. Father notes that he has been an active caregiver to Children and attended Children's school and extracurricular events. **Id.** at 4-5. He asserts that he has attempted to work with Mother to improve Children's academics. **Id.** at 5. He states there is no record of abuse from 1996 to 2014. **Id.** at 5-6. Father asserts that Mother physically and verbally abused three of the four children. **Id.** at 6. He emphasizes that Children expressed a preference to reside with him and that he can provide Children a safe residence while maintaining continuity in Children's preferred school district. **Id.** at 7.

Initially, we note that in cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

**M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) sets forth the best-interest factors that the trial court must consider in making a custody award. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 & 79 n.2 (Pa. Super. 2011). Those factors include:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

We have stated that the trial court is required to consider all of the Section 5328(a) factors in entering a custody order. *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011). Although the trial court is required to give "weighted consideration to those factors which affect the safety of the child"

pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. ***M.J.M.***, 63 A.3d at 339. As we stated in ***M.J.M.***:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. ***See A.D. v. M.A.B.***, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

***Id.*** (emphasis added).

When a relocation is at issue in a case, the court must also consider additional factors.[5] 23 Pa.C.S. § 5337(h). Section 5322 defines relocation as

---

[5] Those factors are:

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.

"[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights."  23 Pa.C.S. § 5322.  If a relocation is at issue, the party seeking relocation bears the burden of establishing that the relocation is in a child's best interests under Section 5337(h).  23 Pa.C.S. § 5337(i)(1).

In **S.J.S. v. M.J.S.**, 76 A.3d 541 (Pa. Super. 2013), for example, the trial court denied a mother's request to relocate and "issued a final custody order providing that [the m]other would retain primary custody if she remained in Erie, [Pennsylvania,] but that if [the m]other chose to relocate, [the f]ather would be awarded primary custody."  **S.J.S.**, 76 A.3d at 544.  In that case, the mother and father agreed to a custody schedule under which

_____

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

the mother had primary custody of the children. *Id.* at 543. The mother then sought to relocate from Erie to Bucks County. *Id.*

After the trial court denied the mother's request to relocate and entered the alternative custody provision granting the father primary custody if mother relocated to Bucks County, the mother appealed. *Id.* at 544. The mother argued in part that the trial court erred in failing to make a custody determination first and then undertaking a relocation analysis rather than "combining the considerations and rendering an order that awarded primary custody contingent on [her] ultimate decision on where she would reside." *Id.* at 549. This Court found no error in the trial court's decision or merit to the mother's argument, noting that the trial court appropriately addressed the relocation factors "because it recognized that the custody arrangement was in dispute only in the event Mother chose to relocate." *Id.* at 550. Ultimately, this Court affirmed the alternate or contingent custody provision finding that the trial court appropriately considered all relevant factors relevant to the children's best interest. *Id.* at 549, 554.

We acknowledge that the *S.J.S.* Court affirmed an alternative custody provision in light of a proposed relocation by a parent. Moreover, we note that the trial court and the parties in the present case have not cited any case law specifically discussing a custody arrangement that was contingent on a child's school district. Our own research has not found any cases directly on this point. However, as noted by Mother, there are cases involving the trial

court's determination of the school-related issues that may inform our review of the trial court's alternate custody provision.

In **S.W.D. v. S.A.R.**, 96 A.3d 396 (Pa. Super. 2014), the mother and father shared legal custody and the mother had primary physical custody, with the father having partial custody. The parties subsequently agreed to an informal modification of the physical custody arranged to a more equal sharing of custodial times under a "5-2-2-5 schedule."[6] **Id.** at 398. Following a disagreement over the child's school, the mother unilaterally enrolled the child in the school of her choice, and the father filed a complaint for special relief, which contested the child's kindergarten and the change from the informal custody arrangement. **Id.** The trial court determined that the child would remain at the mother's school of choice, but in so doing did not consider all factors under Section 5328(a). **Id.** at 403.

On appeal, the **S.W.D.** Court affirmed the trial court's order regarding the mother's choice of school.[7] **Id.** at 404. This Court observed:

> resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical

---

[6] A 5-2-2-5 schedule refers to the alternating days of custody between the parties over a two-week period.

[7] The **S.W.D.** Court, however, vacated the portion of the order refusing to enforce the informal 5-2-2-5 schedule. We concluded that the trial court abused its discretion by failing to consider all of the Section 5328(a) factors with respect to the father's claims regarding the appropriate custody schedule. **S.W.D.**, 96 A.3d at 406-07.

custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times . . . these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

*Id.* at 403.

The *S.W.D.* Court further noted:

when parties share legal custody of a child, they may reach an impasse in making decisions for the child that implicate custody. When that happens, the parties turn to the trial court to decide their impasse. This type of court intervention does not affect the form of custody and hence, the 5328(a) best interest factors do not all have to be considered.

*Id.* at 404 (citations omitted).

In affirming the trial court's ruling regarding the choice of school, the *S.W.D.* Court emphasized that the trial court was not required to address all of the Section 5328(a) best interest factors. *Id.* We further stated:

In making its decision, the trial court noted several factors that weighed in favor of attendance at [the mother's choice of school]. [The f]ather conceded that enrollment at [his school of choice] was to be temporary. The trial court found attendance there would not be in the best interest of [the c]hild, as it would require [the c]hild to change schools and not be suited to maintaining consistency in his life. The trial court also found that [the father's] chief concern with [the m]other's school was its distance from his home. While the trial court was sympathetic to this concern, on balance it did not find this to be weighty enough to warrant attendance at [the father's school of choice]. Finally, the trial court found no persuasive evidence that [the c]hild would receive a substandard education at [the mother's school of choice]. On

these findings, supported by record evidence, we cannot find an
abuse of discretion.

*Id.*

In *Fox v. Garzilli*, 875 A.2d 1104 (Pa. Super. 2005), the mother filed

a petition to modify custody to have the children attend the school district

where she moved following her divorce and the resolution of equitable

distribution issues.[8]  *Fox*, 875 A.2d at 1106.  The mother appealed the trial

court's denial of her motion, and this Court agreed with her that the trial court

abused its discretion.  *Id.* at 1107-08.  The *Fox* Court concluded that the trial

court abused its discretion in relying on the parties' previous agreement that

the children would temporarily attend school in the father's school district.  *Id.*

at 1108.  The Court further concluded that the record did not support the trial

court's finding that the mother would not be burdened by having the children

attend school in the father's school district.  *Id.* at 1110.  The *Fox* Court

further noted that the trial court improperly relied on hearsay testimony

regarding the children's preference to remain in their current school and

emphasized that while the continuity of the children's school was important,

it was not a controlling factor under the circumstances of that case.  *Id.* at

1110-11.

In *S.S. v. K.F.*, 189 A.3d 1093 (Pa. Super. 2018), this Court vacated a

trial court's decision to maintain the children's current school district even

---

[8] In *Fox*, both parents' residences were in the same county.

though the mother requested to relocate to a different county and the father did not live in the children's current school district. *S.S.*, 189 A.3d at 1094. Specifically, in that case, the mother resided in the Pennsbury school district in Bucks County, where the older children were enrolled. *Id.* at 1094-95. However, the mother asserted that she lost her job and did not renew her lease on her residence in Bucks County. *Id.* at 1095. Moreover, the mother requested that she intended to move from Bucks County to Chester County, and have the children attend school in Chester County. *Id.* at 1094-95. The father, who lived in the Bensalem school district in Bucks County, opposed the mother's relocation. *Id.* The father requested that the court award him primary physical custody and permit him to enroll the children in the Bensalem school district. *Id.* Additionally, in the event the court found the Bensalem school district to be inappropriate for the children, the father asserted that he would sell his current residence and move to the Pennsbury school district. *Id.*

The trial court in *S.S.* denied the mother's request to relocate under Section 5337, and following a discussion of the custody factors under Section 5328(a), awarded the parties equal physical custody. *Id.* at 1095-96. As to the children's school, the court directed that the children remain in Pennsbury school district, concluding that educational stability was in the children's best interests. *Id.* at 1096. In support of that directive, the trial court ultimately required that the parties arrange their residential situations so that the children could remain in the Pennsbury school district or pay tuition for the

Pennsbury school district in equal shares. *Id.* The mother and father cross-appealed the trial court's order regarding the children's school and the allocation of tuition. *Id.* at 1097.

The *S.S.* Court vacated the trial court's order. The Court reiterated that

[w]hen parties cannot resolve a dispute about where to educate their children, the court may act as arbiter to decide that issue, based on the best interests of the children. If the court is addressing a request to modify custody in conjunction with the choice of school, the court's choice of school may factor into the court's custody decision. The court's choice of school may in fact require it to modify the parties' physical custody award, in particular "when the parties live far apart, making it impractical for one parent to transport the child to school." Continuity in an educational environment is an important, but not controlling, factor to be considered by the court in making a school or custody decision, and over-emphasis on this factor may constitute an abuse of discretion.

A court may order parents to pay for the cost of school tuition as an additional expense to the standard child support award. However, the court may order a party to pay the cost of tuition only after the court determines that doing so is reasonable in light of the parties' respective incomes and expenses. An order directing a party to pay for tuition, like any support order, "must be fair, non-confiscatory and attendant to the circumstances of the parties."

\*   \*   \*

[I]n allowing [the m]other to move to Chester County, but ordering the [c]hildren to stay enrolled in Pennsbury School District, the court created an additional expense that neither party requested or expected. And, because at the time of the hearing, the court considered school choice as a custody issue only, it made scarce inquiry into the parties' financial situations. It made no finding that the tuition expense was "reasonable," and on this record, we fail to see how it could have done so. The court also failed to allocate the tuition cost in accordance with the support statute. The court thus abused its discretion.

- 19 -

[I]t appears that the court was attempting to drive a compromise between the parties. However, the parties informed the court that they had reached no such compromise. The resultant tuition cost thus existed due to the court's decision alone. The court's choice of school, made without regard to the financial ramifications to the parties—and, by extension, to their [c]hildren—ignored the realities of the case.

On remand, unless the parties request otherwise, the court must choose a school that does not financially burden the parties, and it must make its decision by considering both the relocation and custody factors.

*Id.* at 1098-00 (citations and footnotes omitted).

The instant matter is closer to *S.J.S.* and unlike *S.W.D.* and *Fox.* Although the principal dispute in this appeal involves a choice of school, the trial court fashioned an alternate custody provision contingent on the school district. That portion of the order impacted the form of Mother's custody as Mother would lose of primary custody if she moved out of Children's school district. *See* 23 Pa.C.S. § 5323(a). *Compare S.J.S.*, 76 A.3d at 549, 554, *with S.W.D.*, 96 A.3d at 404, and *Fox*, 875 A.2d at 1109-10. Therefore, the trial court's decision must be supported by a consideration of the statutory factors under Section 5328(a). *See S.J.S.*, 76 A.3d at 549, 554; *see also S.S.*, 189 A.3d at 1099-00. However, because there is no indication that Mother's proposed move constituted a relocation within the meaning of the Section 5322, there was no requirement for the trial court to consider the factors in Section 5337. *Cf. S.J.S.*, 76 A.3d at 549, 554; *cf. also S.S.*, 189 A.3d at 1099-00; Trial Ct. Op. & Order, 4/24/19, at 7 (noting that "Mother's proposed move will not significantly impair Father's custody rights").

In the instant case, the trial court, in its order entered following the hearing, discussed the Section 5328(a) custody factors and found that Section 5328(a)(6) and (a)(12) favored Father, and that Section 5328 (a)(10) favored Mother. The trial court then found the remaining factors were equal, including Sections 5328(a)(2), (3), (4), and (13). The trial court noted:

Factor 2—The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

This factor favors neither party. There was no evidence presented by either party about present or past abuse and we find this factor remains neutral.

Factor 3—The parental duties performed by each party on behalf of the child.

This factor does not favor either party. [Children] have been well cared for by both parents. Although Mother has been the primary caregiver for [Children], both of the parties are involved with [Children's] care, education and activities.

Factor 4—The need for stability and continuity in the child's education, family life and community life.

This factor favors neither party. Both parents have been a stable and permanent influence in the lives of [Children]; therefore, we find that factor 4 favors neither party.

\* \* \*

Factor 6—The child's sibling relationships.

This factor favors Father. [Children] live with Mother and their older siblings live with Father. [M.H.], [Children's] older sister[,] assists Father in child care when they are in Father's custody. Both [Children] indicate that they have good relationships with [their siblings. Children] see their older siblings on the first,

second, and fourth weekends of every month; we consider these relationships to be important and, therefore, we believe this factor favors Father.

\* \* \*

Factor 10—Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

This factor favors Mother. Mother has been providing for [Children] since they were born. She has taken [Children] to medical appointments and provided for their daily needs. While Father has provided for their needs when they are in his custody, Mother has expressed concern for [Children's] educational needs. Father would like [J.H.] to be involved in sports and Mother stated that she would like his education to come first. Mother would not like [J.H.] to participate in sports unless his grades were adequate. We believe that the relationship both parties are providing emotional, developmental and education[ for Children;] nevertheless, we believe that this fa[vors] Mother.

Factor 12—Each party's availability to care for the child or ability to make appropriate child-care arrangements.

This factor favors Father. Father testified that his daughter and eldest son live with him and help with child care. Father's girlfriend . . . also provides child care for [Children]. Mother has not indicated that there is anyone to assist her in child care for [Children]. She testified that [Children] are sometimes at home alone until she gets home from work. In her Custody Questionnaire, entered into evidence as Defendant's Exhibit #2, Mother indicates that she works Monday through Friday from 7:30 am until 6:00 p.m. and on Saturdays from 7:30 am until 6:00 p.m. Father testified that he works from 5:00 am until 3:00 or 3:30 p.m. and has no weekend work. However, Father indicated that [Children's older sister] and his girlfriend . . . assist him with Children. We believe that this factor favors Father.

Factor 13—The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

- 22 -

This favors neither party. Father complains that Mother will not let [Children] play sports and he wants their daughter or older son involved with their lives. Mother is concerned that [Children] will do anything to please Father. She believes that Father allows [Children] get away with too much; however, Mother recognizes that [Children] love and need their Father.

\* \* \*

Factor 16—Any other relevant factor.

In this case, the parties have shared legal and physical custody of [Children. Children] love and want to be with their parents. We are concerned that the parties are incapable of meaningful communicating with each other. We are convinced that both parents love and nurturing towards [Children] and want what is best for them. However, Mother has been the primary caregiver for the minor children since their birth.[9] Mother wants to move to be closer to her employment and she testified that she had problems with some of her current neighbors who are using drugs. Mother was in subsidized housing but now is able to find other housing. Father wishes for [Children] to participate in sports and stay in their current school district. While Mother seems to be concerned about [J.H's] participation in sports if it conflicts with his schooling and grades.

As we have stated above, many of the custody factors are neutral; however, we believe that at this time it would be in [Children's] best interest to remain in their current school district. Accordingly, if Mother choses to remain in the East Stroudsburg [(South)] School District, it would be in [Children's] best interest to live primarily with Mother. However, if Mother wishes to move from the East Stroudsburg (South) School District, necessitating a change in school districts for [Children], we believe that it would be in [Children's] best interest to live primarily with Father.

_____

[9] We note that the primary caretaker doctrine, under which a trial court was to give "positive consideration" to the parent who was the primary caretaker when the parents are both fit, is no longer viable. *See M.J.M.*, 63 A.3d at 339. Nevertheless, a court may still consider a parent's role as a primary caretaker when considering the Section 5328(a) factors. *Id.*

> After careful consideration of the testimony and evidence in this matter, we believe that it is in [Children's] best interest to have the parties continue to share legal and physical and that is it in their best interest to remain in the East Stroudsburg (South) School District.

Trial Ct. Op. & Order, 4/24/19, at 4-8.

We note there are some discrepancies between the trial court's opinion and order and the record. For example, there was evidence of a prior protection from abuse order against Father entered when Mother and Father ended their relationship,[10] and Father testified that Mother was abusive towards Children and their siblings.[11] Children testified that they preferred to live with Father.[12] Father also did not testify that his girlfriend assisted with the care of Children. Nevertheless, in considering these discrepancies, our review establishes that the record as a whole supports the trial court's findings and conclusions.

As detailed above, Mother argues that none of the statutory factors discussed by the trial court favored Father. Mother essentially questions the trial court's findings and asks this Court reweigh the evidence regarding (1) which parent was more interested in and could better promote Children's academic performance, (2) the reliability of Children's siblings as appropriate child care providers, (3) the entry of a protection from abuse order against Father in 1996, (4) Children's motive for their preference to remain in the East

---

[10] N.T., 4/22/19, at 40.

[11] *Id.* at 30, 33-37.

[12] *Id.* at 130-33, 135, 138, 147-48.

Stroudsburg (South) school district, (5) her motives for seeking to move from the East Stroudsburg (South) school district, and (6) the balance of Children's preferences against her intention to retain primary physical custody of Children.

As we stated in **King v. King**, 889 A.2d 630 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion." **King**, 889 A.2d at 632 (citation omitted). Moreover, the weight that a trial court gives to any one factor is almost entirely within its discretion. **See M.J.M.**, 63 A.3d at 339. Here, Mother, in essence, questions the trial court's conclusions and assessments and asks this Court to reweigh the evidence. This we cannot do. **See King**, 889 A.2d at 632. Accordingly, we conclude that Mother failed to establish that the trial court abused its discretion when reviewing the Section 5328(a) factors.[13]

Order affirmed.

---

[13] Although we have concluded that Mother's specific arguments do not entitle her to appellate relief from the alternative custody provision, Mother is not precluded from seeking a modification of the custody order based on evidence that the modification will be in the best interest of Children.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/8/20</u>